UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CASE NO. 5:16-cv-725-Oc-39PRL

LACRESHA CALDWELL,

    Plaintiff,

                                             **COMPLAINT AND TRIAL BY JURY**

v.                                 **DEMAND**

SCOTT'S CREDIT CARS, INC.,

    Defendant.

_____/

**FILED**

2016 DEC 19  AM 11:01

CLERK, US DISTRICT COURT
OCALA, FLORIDA

**NATURE OF ACTION**

1.      This is an action brought under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

and its implementing Regulation Z, 12 C.F.R. Part 226 (collectively "TILA").

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts

and transactions giving rise to Plaintiff's action occurred in this district.

**PARTIES**

4.      Plaintiff, Lacresha Caldwell ("Plaintiff"), is a natural person who at all relevant

times resided in the State of Florida, County of Lake County, and City of Tavares.

5.      Defendant, Scott's Credit Cars, Inc. ("Defendant"), is a Florida corporation who

at all relevant times was engaged in the business of selling and financing motor vehicles.

6.      At all relevant times, Defendant, in the ordinary course of its business, regularly

extended or offered to extend consumer credit for which a finance charge is or may be imposed

or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable.

7.     Defendant is a "creditor" within the meaning of TILA, 15 U.S.C. § 1602(g) and 12 C.F.R. 226.2(17).

## FACTUAL ALLEGATIONS

8.     On or about December 18, 2015, Plaintiff visited Defendant's dealership to shop for an automobile.

9.     Plaintiff selected a 2007 Chevrolet Impala (the "Vehicle") and agreed to purchase the Vehicle from Defendant.

10.     Plaintiff purchased the Vehicle for personal, family, or household purposes.

11.     In connection with the purchase of the vehicle, Plaintiff executed a retail installment sales contract (the "Contract") with Defendant, attached as Exhibit A.

12.     The Truth in Lending disclosure statement provided to Plaintiff in connection with the purchase of the Vehicle disclosed an "annual percentage rate" of 20.99%, a "finance charge" of $7,529.76, an "amount financed" of $15,765.73, a "total of payments" of $23,295.49, and a total sale price of $23,295.49. *Id.*

13.     The Truth in Lending disclosure statement further disclosed a payment schedule comprised of two payment streams, one consisting of 47 monthly payments of $490.00 beginning on January 13, 2016, and an irregular payment of $265.49. *Id.*

14.     The Truth in Lending Disclosure provided to Plaintiff, in connection with the purchase of the Vehicle, failed to disclose the due date for the payment of $265.49.

15.     It is impossible for Plaintiff to determine what date the $265.49 payment is due from the Truth in Lending disclosures provided by Defendant.

2

## COUNT I
### VIOLATION OF 15 § U.S.C. 1638(a)(6)

16.    Plaintiff repeats and re-alleges each and every factual allegation contained above.

17.    TILA requires creditors to disclose "The number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(g)(6); 12 C.F.R. § 226.18(g).

18.    The official staff commentary to Regulation Z, § 226.18(g)(4) further provides:

General Rule.   Section 226.18(g) requires creditors to disclose the timing of payments.   To meet this requirement, creditors may list all of the payment due dates.   They also have the option of specifying the "period of payments" scheduled to repay the obligation.   As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "Monthly" or "Bi-weekly" and the calendar date that the beginning payment is due.

19.    Moreover, the Federal Reserve Board publishes model forms to instruct creditors on how to make the disclosures required by the act.

20.    The model forms make clear that if a payment schedule includes an irregular payment, creditors must provide a due date for the irregular payment. *See* Appendix H to 12 C.F.R. part 226, at H-11 and H-12.

21.    The Truth in Lending Disclosure provided to Plaintiff, in connection with the purchase of the Vehicle, did not disclose a due date for the payment of $265.49.

22.    Defendant violated the disclosure requirements of 15 U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18(g) when it failed to disclose the timing of all payments scheduled to repay the total of payments, in the segregated Truth in Lending disclosures provided to Plaintiff.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)   Adjudging that Defendant violated 15 U.S.C. § 1638(a)(6);

b)   Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1640(a)(2), in the amount of twice the finance charge;

3

c)  Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1640(a)(1);

d)  Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1640(a)(3);

e)  Awarding Plaintiff any pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem just and proper.

### TRIAL BY JURY

23.     Plaintiff is entitled to and hereby demands a trial by jury.

Dated: December 15, 2016.

Respectfully submitted,

/s/ Alex D. Weisberg
Alex D. Weisberg
FBN: 0566551
Weisberg Consumer Law Group, PA
Attorneys for Plaintiff
5846 S. Flamingo Rd, Ste. 290
Cooper City, FL 33330
(954) 212-2184
(866) 577-0963 fax
aweisberg@afclaw.com

Correspondence address:
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206

4

Exhibit "A"

**LAW 553-FL-ARB-eps 5/09**

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number VI/1007636/1    Contract Number 4021621    12/18/2015

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller - Creditor (Name and Address) |
|---|---|---|
| LACRESHA NICOLE CALDWELL<br>1228 LONGVILLE CIR<br>Tavares            FL    32778<br>Buyer's Birth Month: ▓▓▓▓    Lake | Co-Buyer's Birth Month: | Scott's Credit Cars, Inc.<br>4500 W Colonial Drive<br>Orlando            FL  32808<br>(407)295-6211 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 20.99% per year. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2007 | Chevrolet Impala | 3711 | 2G1WD58C979198970 | [X] personal, family or household<br>[ ] business<br>[ ] agricultural<br>[ ] ____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 20.99 % | $ 7,529.76 | $ 15,765.73 | $ 23,295.49 | $ 23,295.49 |

**WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| | | Monthly beginning |
| Or As Follows: 47 | $490.00 | Monthly    Beginning    01/13/2016 |
| 1 | $265.49 | |

**Returned Check Charge:** If any check or order of payment you give us is dishonored, you will pay a charge if we make demand that you do so. The charge will be $25 if the check amount is $50 or less; $30 if the check is over $50 but not more than $300; $40 if the check amount is over $300, or such amount as permitted by law.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of each installment.

**Prepayment.** If you pay off all your debt early, you may have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Buyer Signs X *L. Caldwell*    Co-Buyer Signs X _____    *LAW 553-FL-ARB-eps 5/09 v2*  Page 1 of 6

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ 127.33 sales tax)                                          $15,622.33   (1)

2 Total Downpayment =

Trade-in   2009   Chevrolet   Malibu

      (Year)    (Make)    (Model)

Trade-in   1G1ZH57B994252414

               (VIN)

| | | |
|---|---|---|
| Gross Trade-In Allowance | $13,676.02 | |
| Less Pay Off Made By Seller | $13,676.02 | |
| Equals Net Trade In | $ 0.00 | |
| + Cash | $ 0.00 | |
| + Other | $ 0.00 | |
| (If total downpayment is negative, enter "0" and see 4J below) | $ 0.00 | (2) |

3 Unpaid Balance of Cash Price (1 minus 2)                                          $15,622.33   (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf

  (Seller may keep part of these amounts):

| | | |
|---|---|---|
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | |
|    Life | $ 0.00 | |
|    Disability | $ 0.00 | $ 0.00 |
| B Vendor's Single Interest Insurance Paid to Insurance Company | | $ 0.00 |
| C Other Optional Insurance Paid to Insurance Company or Companies | | $ 0.00 |
| D Optional Gap Contract | | $ 0.00 |
| E Official Fees Paid to Government Agencies | | $ 0.00 |
| F Government Documentary Stamp Taxes | | $ 55.30 |
| G Government Taxes Not Included in Cash Price | | $ 0.00 |
| H Government License and/or Registration Fees | | $ 88.10 |
| I Government Certificate of Title Fees | | $ 0.00 |

J Other Charges (Seller must identify who is paid and describe purpose)

| to | CREDIT CARS FINANCE | for Prior Credit or Lease Balance | $ 0.00 |
|---|---|---|---|
| to | N/A | for N/A | $ 0.00 |
| to | Dealer | for Dealer Fee | $ 0.00 |
| to | Dealer | for Electronic Filing Fee | $ 0.00 |
| to | N/A | for | $ 0.00 |
| to | N/A | for | $ 0.00 |
| to | N/A | for Loan Processing Fee | $ 0.00 |
| to | N/A | for | $ 0.00 |

| | | |
|---|---|---|
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ 143.40 | (4) |
| 5 Loan Processing Fee Paid to Seller (Prepaid Finance Charge) | $ 0.00 | (5) |
| 6 Amount Financed (3 plus 4) | $15,765.73 | (6) |

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation: Guía para compradores de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**Optional Service Contracts.** You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

**Rejection or Revocation.** If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

**Servicing and Collection Contacts.** You agree that we may try to contact you in writing, by e-mail, or using pre-recorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**Applicable Law** Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

---

OPTION: ☐ You pay no finance charge if the Amount Financed, item 6, is paid in full on or before _____, Year _____. SELLER'S INITIALS _____

---

## NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ Mos.   _____

                            Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

---

Buyer Signs X _J. Caldwell_ ____ Co-Buyer Signs X _____   LAW 553-FL-ARB-eps 5/09 v2   Page 2 of 6

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.

If any insurance is checked below, policies or certificates will describe the terms and conditions.

Check the insurance you want and sign below:

## Optional Credit Insurance

| ☐ Credit Life: | ☐ Buyer | ☐ Co-Buyer | ☐ Both | ☐ Credit Disability (Buyer Only) |

Term_____    Term_____

Premium: Credit Life $ ____N/A____    Credit Disability $ ____N/A____

Insurance Company Name ____N/A____    Home Office Address_____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:
1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

X_____    X_____
Buyer                        Date        Co-Buyer                        Date

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

X_____    X_____
Buyer                        Date        Co-Buyer                        Date

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

X_____    X_____
Buyer                        Date        Co-Buyer                        Date

## Other Optional Insurance

| ☐ Property Insurance | | months | Premium $ ____0.00____ |
| | Type of Insurance | Term | |
| Insurance Company Name & Address | | | |

| ☐ | ____N/A____ | ____N/A____ | Premium $ ____0.00____ |
| | Type of Insurance | Term | |
| Insurance Company Name & Address | | | |

| ☐ | ____N/A____ | ____N/A____ | Premium $ ____0.00____ |
| | Type of Insurance | Term | |
| Insurance Company Name & Address | | | |

| ☐ | ____N/A____ | ____N/A____ | Premium $ ____0.00____ |
| | Type of Insurance | Term | |
| Insurance Company Name & Address | | | |

| ☐ | ____N/A____ | ____N/A____ | Premium $ ____0.00____ |
| | Type of Insurance | Term | |
| Insurance Company Name & Address | | | |

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

X_____    X_____
Buyer Signature              Date        Co-Buyer Signature              Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

Florida documentary stamp tax required by law in the amount of $ 55.30 _____ has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No. _____

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ ____0.00____ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.
You authorize us to purchase Vendor's or Lender's Single Interest Insurance.

Buyer Signs X_____    Co-Buyer Signs X_____    Date: __12/18/2015__

Buyer Signs X _[signature]_    Co-Buyer Signs X_____

OTHER IMPORTANT AGREEMENTS



**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see paragraph 2.d.) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.

  If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
  You give us a security interest in:
  - The vehicle and all parts or goods put on it;
  - All money or goods received (proceeds) for the vehicle;
  - All insurance, maintenance, service, or other contracts we finance for you; and
  - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

  This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
  You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. We may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

  If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
  - You do not pay any payment on time;
  - You give false, incomplete, or misleading information on a credit application;
  - You start a proceeding in bankruptcy or one is started against you or your property; or
  - You break any agreements in this contract.

  The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.

Buyer Signs X _____   Co-Buyer Signs X _____

**d.** **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e.** **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f.** **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.** **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**Seller's Right to Cancel**

**a.** Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown in this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated below on this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract.

**b.** If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

**c.** Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give you back all consideration Seller has received in accordance with the terms of the Retail Purchase Agreement or Buyers Order.

**d.** If you do not immediately return the vehicle, Seller may use any legal means to take it back (including repossession) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

**e.** While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession.

**f.** The terms of this Seller's right to cancel survive Seller's cancellation of this contract.

---

*The Annual Percentage Rate may be negotiable with the Seller.  The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**SELLER'S RIGHT TO CANCEL - If Buyer and Co-buyer sign here,** the provisions of the Seller's Right to Cancel section above, which gives the Seller the right to cancel within_____days, will apply.

X _A. Caldwell_          X _____
Buyer Signs              Co-Buyer Signs

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _A. Caldwell_ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**NOTICE TO THE BUYER:** a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

---

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration clause on page 6, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _A. Caldwell_   Date **12/18/2015**   Co-Buyer Signs X _____   Date **12/18/2015**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. Another owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____    Address _____ Daniel Gentry _____

Seller signs _Scott's Credit Cars, Inc._   Date **12/18/2015**   By X _____   Title _GM_

Buyer Signs X _A. Caldwell_     Co-Buyer Signs X _____     *LAW 553-FL-ARB-eps 5/09 v2*   Page 5 of 6

## ARBITRATION CLAUSE

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

---

Seller assigns its interest in this contract to **Credit Cars Finance Company**                    (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse          ☑ Assigned without recourse          ☐ Assigned with limited recourse

Seller  **Scott's Credit Cars, Inc.**          By _____          Title  GM

Daniel Gentry

---

Buyer Signs X _____          Co-Buyer Signs X _____

LAW  FORM NO. 553-FL-ARB-eps (REV. 5/09)  U.S. PATENT NO. D460,782
© 2009 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
                                                                                              LAW 553-FL-ARB-eps 5/09 v2  Page 6 of 6